JAMES HARKNESS AND MARGARET M. HARKNESS, HIS WIFE, vs. JOHN FRASER AND SOPHIA FRASER, HIS WIFE.

1. Where a party in a confidential relation to another, as by voluntarily undertaking to aid the other in obtaining possession of his property in the hands of others, takes advantage of this relation, and by deception or improper influences induces him to part with it without adequate consideration, a Court of Equity may lend its aid to obtain redress, whether the strict relation of principal and agent exists or not.

2. Fraud in fact must be proved, and will not be presumed in the absence of facts tending to prove it.

3. A party is not entitled to have his deed set aside and cancelled simply because he has not received the full consideration.

4. A deed will not be set aside, and property thereby attempted to be conveyed restored to the grantor, on the ground that he has not executed his deed in conformity to law.

In Chancery—appeal from the Circuit Court for Nassau county. The opinion states the pleadings and facts.

*C. P. Cooper* for Appellants.

*Sanderson and L'Engle* for Appellees.

RANDALL, C. J., delivered the opinion of the court:

The bill states that some time in 1866, the defendants obtained from complainants a conveyance to Sophia Fraser, of a lot in Fernandina known as lot 7, in block 46, and that said conveyance was obtained by fraud and covin. That complainants left Fernandina a short time before the war, having owned and possessed said property, and went to New York, where they remained till the cessation of hostilities. During their absence one S. N. Freeman obtained possession of the property under an alleged sale by the United States Tax Commissioners, or some other way, and they could not obtain possession, although they redeemed the same in accordance with the acts of Congress. That John Fraser offered to act as their agent in obtaining possession, and impressed them with the idea, and made them believe, that he had influence with Freeman sufficient to accomplish a satisfactory arrangement, by which they would recover their house and premises; and complainants accepted his services, and trusted and confided in him. Nevertheless he kept postponing and deceiving their hopes, pretending he was endeavoring to effect the desired object, until at last, being so often disappointed and deceived, and defendant offering to buy the lot, they concluded to sell to him on condition that he would enable them to get a comfortable house in Fer-

nandina, and agreed to take $1000 for the premises, defendants becoming responsible for any incumbrances; and made and executed said conveyance with that understanding, but which $1000 defendants never paid them; in lieu of which, John Fraser undertook to turn over to them, without executing any good and sufficient title in fee simple to the same, a lot in Fernandina, of less size, together with a small quantity of lumber insufficient to build a comfortable house; and after complainants, with the aid of Fraser, who controlled the work, had attempted to build, and had used up and exhausted the building material, and had only erected a rough frame without covering, complainants abandoned the work, and informed Fraser that he must pay the $1000 or return them their property; which, strange to say, he had succeeded in obtaining possession of directly after he had obtained the deed from complainants, having pretended he could not get it for them without great delay; which, of itself, bore the appearance of fraud. And they believe this was the fact, and that the whole thing was worked in the way it was to defraud complainants of their property and get it for nothing, or much less than its real value. And complainants have thrown back the small lot and incomplete framework on the hands of Fraser, which he refuses to accept, although he has made no title to complainants; and defendants refuse to pay them for their property or return it to them, or do anything in the premises. And as defendants are proposing and endeavoring to sell and dispose of said lot 7, in block 46, complainants pray an injunction, &c., and a decree that defendants bring into court and deliver up the deed executed by them, to be cancelled, and that the title and right of possession is in complainants, and that the sheriff eject the defendants and put complainants in possession; and for other and further relief, &c.

The answer of defendants admits that complainants did execute the deed of lot 7 as alleged, but denies that it was done under all the circumstances stated. That Fraser was not the agent of complainants; did not offer his services, but merely

stated to complainants that he would use his influence with Freeman to induce him to give up the property; did his best to accomplish the purpose; did not agree to get them a comfortable house; complainants placed the value upon their property, viz.: $1000, together with $140 and interest due to J. Finnegan, by mortgage thereon, and subject to existing incumbrances, viz.: possession by Freeman under a tax sale, and occupation by some negroes, for which defendants became responsible. Defendants deny the allegations as to non-payment of the consideration, and allege that full consideration has been paid; allege that they assigned their right, title, and interest in a lease for ninety-nine years from the Trustees of the Florida Railroad to Sophia Fraser, of lot 10, square 29, with improvements valued by both parties at $600, which was taken and received by complainants as part of the consideration of the deed, which assignment of lease was written by Harkness; and complainants seemed well satisfied with the premises, and took possession and commenced building thereon, and have offered it for sale. Also defendants delivered complainants a lot of lumber valued at $220, which was received by complainants as part of the consideration; performed labor as carpenter in construction of a house amounting to $40, and Harkness was indebted to defendant, Fraser, in the sum of $120 for premises rented to him before the war. That after the purchase Fraser took measures to redeem the premises from the tax sale by paying Freeman $200, and bought off the persons who were in possession. Has paid Finnegan $140 principal and $71 interest, and the mortgage has been cancelled. Have fairly and equitably complied with the agreement, and are ready to perform anything inadvertently omitted. Deny all fraud, covin, &c.

Complainants filed a general replication.

The cause was heard before the judge of the Fourth Circuit, on the second day of January, 1869, upon the bill, answer and proofs, whereupon the judge rendered a decree dismissing the bill with costs, from which decree the complainant appealed.

The petition of appeal prays a reversal of the decree upon several grounds, which will be treated in the order in which they are alleged, in connection with the proofs.

1. That an agency was proven in John Fraser in the premises, which involved confidence from said complainants in him, and of which he took advantage, which vitiated the sale and rendered it null and void ; and

2. "That fraud is apparent in the whole transaction on the part of John Fraser."

Agency is founded upon a contract, express or implied, by which one of the parties confides to the other the management of some business, to be transacted in his name, or on his account, and by which the other assumes to do the business and to render an account of it; and may be created by writing or verbally.  2 Kent Com., 612.

The complainants allege in their bill that John Fraser offered to act as their agent to obtain possession of their premises; made them believe he had influence with Freeman, and could accomplish a satisfactory arrangement in the recovery of their premises ; and that they accepted his services and trusted and confided in him.  No particular instructions were given him, and he, it is inferred, undertook, voluntarily, to assist them. The complainant, James Harkness, testifies that after he had redeemed his property from the tax sale, Fraser wanted to hire the property in question; that he consented to rent it to him if he could find out the agent of the tax purchaser; and that "Fraser suggested the necessity of having an agent there to obtain possession, and I appointed him ; " gave him no written power, but regarded him as his agent and friend.  After several months he wrote to Fraser to find out the agent and get possession. Mrs. Fraser, in behalf of her husband, wrote Harkness that Fraser had not obtained possession, but that he had found " that S. N. Freeman was the agent, but that he declined to give up possession unless the purchase money was refunded."  This letter was " so unsatisfactory " that Harkness "remained in Savannah

some months after its receipt." Afterwards Harkness came to Fernandina to dispose of the property or get possession, and went to Fraser's house, and he and Fraser went, at Harkness' suggestion, to see Freeman, and told him that Harkness was the original owner, and offered to rent the house; but Freeman refused to rent it to Harkness, though he had offered to rent it to Fraser.

John Fraser, in the answer, denies that he was an agent for Harkness, or that he offered his services, but says he merely stated to him that he would use his influence with Freeman to induce him to release the property, and did his best to accomplish this purpose; and in his testimony says that he was not his agent, but acted simply as his friend. This is all the case shows in reference to an "agency."

It is conceived that an agency, considered in its ordinary or commercial sense, is not established; but there evidently was a confidential relation existing between the parties, involving trust and good faith, and in cases of this character, if one party takes advantage of the confidential relation to impose upon another, and by imposition, deception, or undue influence, does an injury to the other, a court of equity will lend its aid to remedy the wrong done. See Dunlap's Paley on Agency, 11; and Hugenin vs. Basely, 14 Ves., jr., 299. The evidence of the abuse of this confidential relation, as alleged by complainants, is, that the defendant, Fraser, having undertaken to act in behalf of the complainants, neglected to bring about a satisfactory arrangement, failed to obtain possession of the property for the complainants, negotiated for the renting of the property from Freeman in his own behalf, purchased the property from the complainants, and soon afterwards obtained the possession, and has ever since occupied it. We fail to see any substantial evidence of fraud or imposition in these circumstances. The inference that Fraser, while pretending to act for his friend, was in reality taking advantage of his confidential relation, soothing him with fair promises and at the same time managing "to pre-

vent the complainants consummating their wishes," and to obtain the property for himself, is not substantiated in the facts. It is true that Freeman refused to rent the property to Harkness; but there is nothing to show that Fraser was in any way responsible for this. Freeman, knowing that Harkness was once the owner, and perhaps having no great confidence in his tax title, and not wishing to place an antagonist in possession of the property in dispute, would very naturally refuse to rent it to him. It appears, also, that Freeman had offered to give up the property "on the purchase money being refunded," and that this was declined by Harkness. It does not appear how much this was, but it does appear, by the answer and the testimony, that when Fraser purchased the property, he paid Freeman two hundred dollars, and twenty-five dollars "to drop the appeal" which had been taken from the action of the Tax Commissioners. And this purchase by Fraser was made after the "confidential" relation between the parties had ceased, and after Finnegan had commenced proceedings to foreclose his mortgage. And besides, after Fraser had purchased and gone into possession of the property, Harkness says he had employed Fraser to sell another house for him, and because he did not do so, was one reason why he did not complete the building on the lot purchased of Fraser.

All the facts which tended to excite the suspicion of fraud on the part of Harkness, culminated with the taking possession by Fraser of the house, a few days after its purchase from Freeman; and yet Harkness does not seem to have been aware of, or suspected, any fraud or unfairness, for several months afterwards. If any circumstance occurred subsequently to arouse any such suspicion, the evidence of it has not been placed in the record.

The complainants allege that Fraser "kept postponing and deceiving their hopes, pretending he was endeavoring to effect the desired object, until at last, being so often disappointed and deceived, and defendant offering to buy the lot, they concluded

to sell to him, on condition that he would enable them to get a comfortable house, and agreed to take $1000 for the premises, defendants becoming responsible for any incumbrances, and made and executed said conveyance with that understanding," &c. Now if it is true that they then discovered that they had been deceived and betrayed by Fraser, it is very strange that they should have had any further transactions with him, or given him an opportunity to consummate the very purposes of the deception.

It is not discovered that the fraud was very detrimental to Harkness, for the Rev. Mr. Baker testifies that Harkness agreed to sell him the property for two hundred dollars; and yet Fraser, soon after, bargained with him for it at one thousand dollars.

3. The third ground upon which the decree is sought to be reversed is, that "the supposed or attempted bargain and sale was *nudum pactum*, no adequate consideration having passed from John Fraser and wife to complainants."

The appellants cite the case of the Southern Life Insurance Company vs. Cole, 4th Fla. Reports, in support of this position. That case was entirely unlike the present. There the plaintiff undertook to foreclose a mortgage given by Cole, and the court found that there had never been a delivery of the mortgage, and that there had been no consideration of benefit or advantage to the mortgagor, or detriment to the grantee, and declared the bond and mortgage *nuda pacta*.

The bill charges that the complainants agreed to take $1000, in addition to the payment of the incumbrances (something over $200), and made and executed their deed of conveyance, "but which $1000 the defendants never paid them, in lieu of which Fraser undertook to turn over to them, without executing any good and sufficient title in fee simple to the same, a lot in Fernandina of less size, together with a small quantity of lumber," and that after complainants had attempted to build, and used up the building material, leaving the house unfinished, "they abandoned the work, and informed Fraser that he must pay the

$1000, or return them their property." And that complainants "have thrown back the small lot and incomplete framework upon the hands of Fraser, which he refuses to accept," and refuses to return their property or pay them for it, &c.

The answer denies the allegation of non-payment of the consideration, and says that full consideration has been paid ; that the defendants assigned their right, title and interest, in a lease for 99 years, of lot 10, square 29, with improvements thereon, valued by both parties at $600, which was taken by complainants as part consideration for said lot 7, which assignment was written by Harkness; that complainants took possession of lot 10 and commenced building on it (and had offered it for sale) ; that Fraser delivered lumber of the value of $220, also as part consideration; that he did carpenter work amounting to $40, and that Harkness was otherwise indebted to him in the sum of $120; that defendant paid Freeman $200, to get possession of the house, and "bought off" the persons in possession; that he has paid Finnegan $211, principal and interest, of the mortgage thereon.

The lease, in evidence, is dated 20th February, 1858, executed by the Trustees of the Florida R. R. Co., to Sophia Fraser, for the term of ninety-nine years, at an annual rent of sixteen dollars, payable annually, and provides that the lessee will be entitled to a title from the R. R. Co., at any time, on payment of two hundred dollars and all arrears of rent, taxes, &c. An assignment is indorsed, signed by John Fraser and Sophia Fraser to———— (erased.)

The testimony discloses a sale and conveyance by the complainants, to the defendants, of their lot, for the consideration of one thousand dollars and the payment of certain incumbrances; the possession at the time being in other parties, who made some sort of claim thereto, and whom the complainants found it difficult to dispossess, and they were unwilling to pay the amount required to obtain possession. The complainant James Harkness drew up the deed, and the complainants execu-

TERMS HELD IN 1868-'9.  345

James Harkness and Wife vs. John Fraser and Wife—Opinion of Court.

ted and delivered it. The complainant H. also drew up an assignment of the lease on the back thereof, arranged for the payment of the rent in arrear to the railroad company, and of course knew what the lease contained. The name of Harkness in the body of the assignment was struck out by himself, for fear of subjecting the property to the payment of his debts, and he deposits the lease in the hands of Mrs. Fraser to hold until he should determine what name to insert instead of his own. The assignment was not acknowledged before an officer by Mrs. F., because it has not been thus filled up and completed. There has been no refusal to acknowledge and deliver it when required. It has not been demanded. The value of the leasehold was agreed upon at $600. Lumber selected by Harkness has been delivered to him to the amount, or near the amount, contracted for. He took possession of the leased lot, occupied the house upon it eight months; commenced building; employed Fraser to work upon it; sold off some of the lumber; refused to receive more lumber; and undertook to repudiate the whole arrangement, on the ground, as he alleged, at one time, that he could not complete the building for want of means on account of failing to sell one of his houses; and at another time, because he believed he was being cheated in the lumber; having also received defendant's money to pay the rent due the railroad company; and after having refused to receive any more lumber, Fraser offered to settle up in money the balance due, but which Harkness says was never done; and there has been no effort at a negotiation toward effecting an amicable settlement. All this appears from the showing of Harkness himself.

On the other hand, Fraser gave possession of the leased lot and house, which Harkness occupied from May to January, paid up Harkness' mortgage to Finnegan of $211, let complainants have about $200 worth of lumber, paid Freeman $200 and upwards to get possession of the house purchased, and so far as can be discovered, has done and is willing to do all that can be rightfully demanded of him in the premises. The precise state

346       SUPREME COURT.

James Harkness and Wife vs. John Fraser and Wife—Opinion of Court.

of the accounts between the parties does not appear, there being no master's report to that end in the record; and there is no prayer in the bill contemplating an accounting or a decree thereon.

4. The fourth ground of reversal is, "that Sophia Fraser never acknowledged her act in signing, sealing, and delivering the lease referred to in said bill of complaint, to the complainants, as required by the statutes made and provided for the conveyance of the separate property of married women; and otherwise John Fraser and wife did not execute a valid and legal title-deed in said lease lot to complainants or either of them."

This ground is, in the main, disposed of above. The reasons why the defendants have not completed the transfer of the lease are fully explained by the testimony of the complainant, Harkness, and there has been no refusal to complete such transfer. There is no allegation in the bill of complaint that the defendants agreed to make a perfect title to the leased lot. On the contrary, the testimony shows rather conclusively that the complainants bargained for the lease itself, and the estate it carries. They do not pretend to have been deceived or seduced into taking a lease when a deed was called for, and the testimony indicates that they are persons of fair intelligence. The bill, so far as it relates to this leased lot, simply alleges that the defendants agreed to give $1000 for complainants' lot, "but which defendants never paid them; in lieu of which John Fraser undertook to turn over to them, without executing any good and sufficient title in fee simple," a lot and a quantity of lumber, &c. There is no proof that there was any fraud in the matter, and the whole case referring to the lease is contained in the testimony. The bill does not mention the lease. Neither is there any charge in the bill that the property sold by defendants was the separate property of Mrs. Fraser.

5. The fifth ground is that "Margaret M. Harkness, being a *femme covert*, and the property in controversy having been her

separate property, as appears by the acknowledgment to the deed, is under the peculiar protection of the chancery court, against all over-reaching imposition and fraud, by whomsoever practiced. Besides which, her acknowledgment of her act in signing the original deed is irregular, which renders the whole act null and void; as the statute is to be strictly construed and pursued permitting conveyance of separate property of married women, and prescribing and directing the manner of conveying the same, as it is in derogation of the common law."

There is no allegation in the bill that the property sold by the complainants was the separate property of Mrs. Harkness, nor is there any competent proof of that fact. The mention of it in her acknowledgment does not put the question before the court for its consideration, nor is this recital of it very good evidence of the fact.

The bill alleges that the deed *was* executed by the complainants. The deed introduced in evidence in the case has appended to it what purports to be an acknowledgment, signed by Mrs. Harkness, and it recites that the acknowledgment is made before one Johnston, a justice of the peace, and that he attests the same; but instead of this, Justice Johnston's signature is not affixed, and it is signed "H. Timanus, justice of the peace." If in fact she did sign and acknowledge in presence of Timanus, as a justice, the recital in the body of the paper that it is made before another justice, may present a question to be determined in some other form of proceeding. It is not in the issue in this case. It is somewhat anomalous, that a party should come into a court of equity and demand that his deed be set aside because of his own blunder, or his imperfect execution of the instrument. If it be true that the property was her separate estate, and that she has not executed a conveyance of it in such manner as to convey the title, her remedy, if she has any, is by some other proceeding.

These suggestions are made only because the matter was dwelt upon in the argument with some earnestness, before this court.

There is in the record the testimony of John Hedges, to the effect that he had purchased the leased lot at a city tax sale, and had taken a deed therefor in behalf of the railroad company, which was the owner of the land in fee. It is unnecessary, in this case, to determine what interest, if any, can be acquired by the owner of land purchasing it and taking a deed for the non-payment of taxes. But as the matter of this tax sale was urged in the argument, as aiding the supposed evidence of fraud, it may be replied that there was nothing in the case to show whether the taxes had been levied upon the property before or after the transaction between these parties.

The bill prays that the defendants may be decreed to bring into court and deliver up the deed executed by the complainants to be cancelled; that the title and the right of possession may be decreed in the complainants, and that the sheriff eject the defendants, and put the complainants in possession, and for further relief, &c. We cannot find that the complainants are entitled to the decree here prayed.

The decree of the Circuit Court must be affirmed, with costs.