## BROOKS et ux. v. LAURENT.

### (Circuit Court of Appeals, Fifth Circuit. December 19, 1899.)

### No. 872.

1. JURISDICTION OF FEDERAL COURTS—SUIT AGAINST ASSIGNEE—RIGHT OF REMOVAL.

The provision of the judiciary act of 1887-88, that a circuit court of the United States shall not have cognizance of any suit to recover the contents of a promissory note or other chose in action in favor of any assignee unless such suit might have been maintained in that court if no assignment had been made, does not prevent such court from entertaining jurisdiction, either originally or by removal, of a suit based on a chose in action brought by a party thereto, who is a citizen of a state, against an assignee of the other party, who is an alien, without regard to the citizenship of defendant's assignor; and such a suit, when commenced in a state court, may be removed by the defendant where the requisite amount is involved.

2. SAME—ANCILLARY JURISDICTION—CROSS BILL.

A circuit court of the United States, which has, by removal, acquired jurisdiction of a suit by a lessor, who is a citizen of the state, against an assignee of his lessee, the defendant being an alien, for a cancellation of the lease, has also jurisdiction to entertain a cross bill by defendant to enforce specific performance of the lease, which is merely ancillary to the original suit, although by reason of the fact that defendant's assignor is a citizen of the same state as complainant the cross bill could not have been maintained in that court as an original action.[1]

3. MARRIED WOMEN—ESTOPPELS AGAINST.

The enlargement of the property rights of married women by modern legislation and judicial opinions imposes upon them the burdens correlative with such rights, and a married woman who institutes a suit in equity in relation to her property is estopped by the allegations of her pleadings to the same extent as other litigants.

4. EQUITY—ESTOPPEL BY PLEADINGS—INCONSISTENT POSITIONS.

A married woman, who joins with her husband in a bill in equity, which is sworn to by her as well as her husband, for relief based upon a lease of her property, which the bill alleges was made by her husband with her consent, after such allegation and the validity of the lease have been admitted by the answer of the defendant, and the cause has proceeded to a hearing upon the issues joined, cannot take the position on such hearing or on a subsequent appeal that the lease is void because not executed by her as required by statute.

---

[1] For ancillary jurisdiction of federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

This litigation was begun by an original bill in chancery, filed in the state circuit court of Florida on September 17, 1897. The complainants were William M. Brooks and his wife, Sue G. Brooks, citizens of Florida, and the defendants were Achille Laurent and Leon Laurent and Paul Jumeau, agent of the former, citizens of the republic of France. The bill alleged that on April 10, 1895, William M. Brooks leased in writing to one W. A. Fulton a certain tract of land in Florida for the purpose of mining and shipping phosphate rock; that on April 17, 1895, the said William M. Brooks consented to the transfer of Fulton's interest as lessee to Achille Laurent, which was done by a written instrument of that date; that "on February 14, 1895, the complainant Sue G. Brooks became the owner of this land, and was at the last-mentioned date in possession of it, and assented to its transfer by said Fulton to said Achille Laurent, and she authorized and assented to the making of the lease by the complainant William M. Brooks to said Fulton"; that Achille Laurent and Leon Laurent had knowledge of the ownership and possession of the land, but on March 31, 1897, Achille assigned his interest to Leon without the consent of Brooks and wife; and that Achille Laurent took the lease from Fulton, subject to the terms and conditions of the original lease, for the purpose of mining and shipping phosphate rock. The bill further alleged that under the lease all phosphate rock analyzing 75 per cent. of bone phosphate of lime and less than 3 per cent. of iron and alumina should be mined in a workmanlike manner by the usual approved methods; that Laurent should pay $1 per ton, and mine not less than 7,000 tons per year, or pay not less than $7,000 yearly as royalty; that he should settle the claim of the Brooksville State Bank against the land for $10,000, and advance to the said William M. Brooks $4,000, and charge the same, with interest at 10 per cent., against the royalties; that mining could be suspended when the price fell below $4 per ton; that the contract should be forfeited upon a breach of the conditions. The bill alleged that Laurent had failed to mine said land in a workmanlike manner by the usual approved methods; that only a part of the phosphate had been mined; that the gravel rock had been allowed to go to waste; that no machinery was erected until March, 1897, and that for a part of the time mining had been stopped, notwithstanding phosphate rock was worth $4 per ton at the time; that the complainants had been damaged in the sum of $10,000, for which they have commenced an action at law. The bill charged Achille Laurent with fraud in procuring the lease from Fulton, by the settlement with the bank, and by the delay in mining in order to prolong the payment by William M. Brooks of the interest, and deprive him of the rents. The bill also alleged that there was plenty of available phosphate to be mined, and that much more should have been mined; that the contract between Laurent and Fulton was a novation, and discharged Brooks from any liability for the bank settlement; that the assignment of Achille to Leon was fraudulent, and forfeited all rights in the lease to Brooks, and made a cloud on the title to the land; that the rent or royalty due to the complainants was unpaid, and that, after a reasonable time, the complainants entered and took possession of the premises; that the defendant Paul Jumeau attempted by force to regain possession, but without success; that complainants feared that said Jumeau would attempt to obtain possession by violence. The bill prayed that the original lease be canceled and surrendered, that the defendants be decreed to pay the rent due by them of $1,935, and expenses and damages of the suit at law, and for an injunction and process. The bill was sworn to by both William M. Brooks and wife. An injunction was granted on a bond for $100. The state circuit court having jurisdiction of the cause, on motion of the defendants for a dissolution of the injunction, ordered the same dissolved, unless complainants gave bond for $5,000 within 10 days. On October 12, 1897, the court, upon proper notice and bond filed, granted the petition of the defendants to remove the said cause to the circuit court of the United States for the Southern district of Florida, and the record of the former proceedings in the state court was filed on October 22, 1897, in said United States court.

On October 27, 1897, the defendants demurred to the bill, and on November

26, 1897, filed their answer to it. The answer admitted the original lease from Brooks to Fulton, and its transfer to Achille Laurent with the assent of Sue G. Brooks, but otherwise pleaded ignorance of the ownership of the land. It admitted the assignment from Achille to Leon Laurent without the consent of the complainants, but alleged that the complainants did not object to the same. It denied that Achille Laurent took lease from Fulton subject to all the conditions of the original lease from Brooks, but alleged that, under the wording of the assignment from Fulton, Achille Laurent had the right to assign the lease to any other person. It denied that the transfer from Achille to Leon was fraudulent, or a breach of the conditions, or worked a forfeiture, or created a cloud on the title. It alleged that the assignment to Leon Laurent was recorded on April 12, 1897, but that previous to the filing of the bill the complainants made no objection to the same, and now objected as a pretext for claiming a cancellation of the lease. It alleged that Achille Laurent anticipated the action of the complainants in procuring the reassignment of the lease from said Leon to him, and he now owns the same. It alleged that the charges in the bill of not running in a workmanlike manner with approved machinery are without merit; that Achille Laurent continued to mine the phosphate with the same machinery formerly used by Brooks, and paid him rent for it, which was cheerfully received without objection; that the lease did not call for any special machinery. It admitted the amount of phosphate alleged in the bill to have been mined, and alleged that a plant was begun in November, 1896, and completed in March, 1897. It admitted that no mining was done between May and November, 1896, but denied that 75 to 100 tons could have been mined, as claimed, and denied that 1,000 tons of gravel were going to waste. The answer further alleged that the plant erected is as good as the best in use, and that 30 tons per day is fair average running. It denied that the complainants have been damaged to the extent of $10,000, or any other sum, by the facts set out in the bill. It denied that the mining was delayed in order to deprive the complainants of royalties, or to charge up interest in the settlement with the Brooksville State Bank, and alleged that such a course would be unreasonable, because the interest on the plant and the expenses of the same would exceed the interest due by the complainants. It alleged the right to suspend mining when the price of phosphate fell below $4 per ton. The answer further alleged that the plant was erected at a cost of $7,000, and that during its erection no complaint was made about not mining, and the expenditure was encouraged; that from March until June 10, 1897, the new plant mined and washed 3,897 tons, but it was then stopped for the repair of broken machinery; that on June 15, 1897, Brooks sued out a distress warrant for $1,935 for the rent of said lands, and the same was levied on the phosphate mined and on the mining plant erected by the defendant; that defendant traversed affidavit in distress, and said cause stands for trial; that the distress proceedings and levy were a great wrong on the defendant, and the possession of the plant by the sheriff was illegal; that about this time W. A. Fulton began proceedings in chancery, in Citrus county, Fla., to dissolve and wind up the alleged partnership between him and the defendant, asking for a receiver, and obtained an injunction against the sale of phosphate; that, as soon as the defendant effected an amicable settlement with said Fulton, the defendant tendered a sufficient bond to the sheriff, who refused to accept the same until September 18, 1897, after service of the writ of injunction herein; that the sheriff claimed possession of said premises until said date, and refused to deliver the same to said agent, Jumeau, until he had approved said replevin bond, and obtained pay for his deputy from said Jumeau. The answer further alleged that the defendant, Laurent, was entirely willing to go on mining, notwithstanding the price of phosphate, and would have mined in July, and since then, but for the suits at law and in equity; that he instructed his agent, Jumeau, to go to work as soon as possible, and charged that the complainants are alone responsible for the delay in mining. The defendant, Achille Laurent, denied that any royalty is due for the use of said land, but alleged that he advanced $14,000 on royalties, and that there was due him on such advance about $8,000 at the time of the institution of distress proceedings; that no demand was made upon him for any rent, or any notice given him of such claim, prior to the beginning of said suit;

that the complainants fraudulently and wrongfully obtained possession of said leased premises, and all charges that said Jumeau attempted to get possession by force and arms are false and absurd; that on September 13, 1897, said Jumeau went by accident upon said land, without any unlawful intent, and was assaulted and beaten by said deputy sheriff, who threatened with a gun to shoot said Jumeau and one Patterson; that the defendant did not know whether said deputy sheriff was then acting for the sheriff or for the complainants, but that said Jumeau, as agent, was charged for the time of said deputy sheriff to September 18, 1897. The defendant, Achille Laurent, denies that he owes $1,935 as rent, and insists that, as the complainants have already entered suit for that amount, which is pending, they have no right to sue here for said sum, but that said distress proceedings were a waiver of any claim to a forfeiture; and the defendant claimed that the complainants are estopped in equity from any claim of forfeiture after permitting and encouraging the erection of the plant.

On December 8, 1897, the defendant, Achille Laurent, filed his cross bill in this cause, which recited the substance of the original bill and answer, and alleged that the orator is the owner of all rights under the original lease and assignments thereof; that he has done nothing and omitted nothing by which the lease should be forfeited; that he is ready to continue mining, and insists that the complainants should be required by the said circuit court to perform the agreements of said lease. The cross bill alleges affirmatively many facts relating to the litigation between the parties, the substance of which has been stated heretofore. The cross bill prays for a decree of specific performance, for an injunction against interference in the use and enjoyment of the premises, against prosecution of action in distress, against going on the land or removing phosphate or machinery therefrom, and for process.

On January 3, 1898, Brooks and wife filed their answer to the cross bill. The answer refers to many facts alleged in the original bill, denies the truth of most of the allegations in the cross bill, and alleges new facts not material to the assignments of error on this appeal. The record contains no evidence as to the ownership of the real estate described in the lease other than the said statements in the pleadings and contracts. The lease, which was made an exhibit to the original bill, was dated April 10, 1895, and is signed and acknowledged by William M. Brooks and W. A. Fulton. It contains an agreement on the part of Fulton not to transfer it without the assent of Brooks. On the lease is the following indorsement:

"Referring to clause in mining lease between myself and W. A. Fulton, dated April 10, 1895, requiring that W. A. Fulton do not assign or transfer any interest in said lease without my consent in writing, I hereby give my consent that he may assign or transfer any such interest as he may desire to Mr. Achille Laurent, or to the Franco-American Phosphate Co.

"William M. Brooks."

The record contains the assignment by Fulton to Laurent, which is in the form of a contract between them, and refers to the land as belonging to "William M. Brooks and his wife, Sue G. Brooks," and is dated April 16, 1895. There are differences in the terms of the contract of assignment and the original lease, but it is not necessary to state them here.

On the reference to the special master a number of depositions were offered on each side. The master made an elaborate report, in which he found "that the complainants, William M. Brooks and Sue G. Brooks, have failed to sustain the allegations of their bill, and recommends that it be dismissed at the cost of the complainants. The master further finds that the complainant in the cross bill, Achille Laurent, has sustained the material allegations of the cross bill." The complainants filed exceptions to the master's report. The court, the Honorable James W. Locke presiding, rendered a final decree on April 20, 1899, overruling all exceptions to the special master's report, and confirming the report. Relief on the original bill was denied, and relief on the cross bill granted. The lease, as assigned and modified by the agreement of the parties, is declared to be a valid and existing lease between the original complainants and the original defendant, Achille Laurent. The decree enjoins the complainants from disturbing the possession of Laurent, and from obstructing

the mining and shipping of phosphate by Laurent and his agents. It ascertains that there is due by the original complainants, William M. Brooks and his wife, Sue G. Brooks, to Achille Laurent, on the account as stated by the master, $8,532.35, for advances made by the said defendant on behalf of the complainants, pursuant to the lease. It is decreed that the said sum be credited to Laurent and set off against royalties due, or which may be earned or become due, to the complainants. The title or right to possession of the machinery or mining plant situated on the premises is not passed on. A decree was rendered against the complainants for the costs, including the special master's fee. It contains no direction to issue execution except for the costs. The complainants in the original bill (defendants in the cross bill) appeal to this court. There are 14 errors assigned, but the only ones which are deemed material are those relied on in the brief and oral argument, and relate to the jurisdiction of the United States circuit court and to the validity of the lease.

Herbert L. Anderson, for appellants.
John G. Reardon, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that the United States circuit court had no jurisdiction of the case. The position taken by counsel is that the suit in which relief is granted is one by Achille Laurent, as the assignee of Fulton, to enforce specifically the lease, and that the lease is within the prohibition of the statute providing that the circuit court shall not "have cognizance of any suit * * * to recover the contents of any promissory note or other chose in action in favor of any assignee, * * * unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made." 24 Stat. 552, as corrected by 25 Stat. 434. Corbin v. Blackhawk Co., 105 U. S. 659, 26 L. Ed. 1136, is cited as sustaining this position, and it is there held that a suit to compel the specific performance of a contract, or to enforce its other stipulations, is a suit to recover the contents of a chose in action, and is not maintainable, under section 629 of the Revised Statutes of the United States, in the circuit court, by an assignee, if it could not have been prosecuted there by the assignor had no assignment been made. This objection would at least require careful consideration, and would, perhaps, prevail if this were an original suit brought by Achille Laurent, as the assignee of Fulton, against Brooks and his wife. In such case it may be conceded that the record, to show jurisdiction of the circuit court, would be required to show that Fulton, the assignor, could have maintained the suit in the circuit court. Whatever relief is sought by Achille Laurent is not, however, by an original bill, but by a cross bill. The original bill is not filed by an assignee of a chose in action. Brooks and his wife, citizens of the state of Florida, filed the original bill in the state court against Achille Laurent, Leon Laurent, and Paul Jumeau, who are citizens of the republic of France. The original bill and the petition for removal show these jurisdictional facts. The circuit court has jurisdiction of controversies between citizens of a state and citizens or subjects of a foreign state. 25 Stat. 434. The original bill, therefore, when filed by Brooks and wife in the state court, could have

been filed by them in the United States circuit court, for, "where the action is between a citizen of a state and the subject of a foreign state, the court has jurisdiction on account of the character of the parties, without reference to which of them is plaintiff or defendant." Hinckley v. Byrne, 1 Deady, 224, Fed. Cas. No. 6,510. So it appears that the suit, when instituted, was one of which the United States courts had jurisdiction. It was a controversy between citizens of a state and citizens of a foreign state, and involved the jurisdictional amount. It was not a suit by or in behalf of an assignee. The complainants were the lessors in a lease involved in the litigation, but they were neither the assignors nor the assignees of the lease. The controversy being one, as is shown, of which the circuit court had jurisdiction, it was removable under the second section of the act, providing that "any suit of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought, in any state court, may be removed into the circuit court of the United States for the proper district by the defendant or defendants therein, being non-residents of that state." Act Aug. 13, 1888 (25 Stat. 434). After the case was regularly removed, under this statute, to the United States court, the defendants first filed a demurrer, and later an answer, to the bill. A motion was also made by the defendants to dissolve the injunction theretofore granted in the case. It was pending this litigation, and as a part of the defense in the controversy, that Achille Laurent filed the cross bill praying for a decree enforcing the specific performance of the contract of lease, which was the subject-matter of the original bill. The jurisdiction invoked by the cross bill was not original, but ancillary. The jurisdiction of the court was established by the existing record. In Cross v. De Valle, 1 Wall. 5, 14, 17 L Ed. 515, the court said that "a cross bill is a mere ancillary suit, and a dependency of the original." The same principle is involved where a bill of revivor is filed. "A bill of revivor is but a continuation of the original suit, and, if the plaintiff was competent to sue the defendant in the circuit court, his administrator, though a citizen of the same state as the defendant, may revive it." Clarke v. Mathewson, 12 Pet. 164, 9 L. Ed. 1041. The cross bill being merely ancillary to the original suit, it may be maintained although the court would not have had jurisdiction of the cross bill as an original action. Railroad Co. v. Chamberlain, 6 Wall. 748, 18 L. Ed. 859; Osborne & Co. v. Barge (C. C.) 30 Fed. 805; First Nat. Bank of Salem v. Salem Capital Flour-Mills Co. (C. C.) 31 Fed. 580; Freeman v. Howe, 24 How. 450, 460, 16 L. Ed. 749. If the court has jurisdiction of the case made by the original bill, it has jurisdiction of all germane ancillary proceedings, whether by cross bill, bill of revivor, or intervening petitions.

It is contended by the learned counsel for the appellee that there was a novation of the original contract of lease; that the lessee, Fulton, and the lessors agreed to substitute Achille Laurent for Fulton, and that the contract by which the substitution was made so changed the lease as to make a new contract between the lessors

and Achille Laurent. It is claimed that it is not the case of a mere assignment of a chose in action. The contention is that a new contract was made, and that the question as to Laurent's right to sue as assignee is eliminated, and that he is not an assignee. This view finds support in the terms of the lease, which made it nonassignable except by the agreement of the lessors. The material changes, also, made in the lease by the agreement to substitute one lessee for another, give support to this position of counsel. As we decide that the circuit court had jurisdiction, and that the case was removable for the reasons already given, it is unnecessary for us to express an opinion on this contention.

It is claimed by the appellants that the lease was void, and that the court below erred in granting relief on the cross bill. The original bill was filed jointly by William M. Brooks and his wife, Sue G. Brooks. One of its purposes was to obtain the cancellation of a lease. The validity of the lease was not denied in the bill. It was expressly alleged by the complainant Sue G. Brooks that she authorized and assented to the making of the lease by the complainant William M. Brooks. Conceding its validity, and proceeding upon that theory, she sought its cancellation on account of breaches of the lease by the lessee. She complained that the mining was not done in a workmanlike manner, that the lessee did not mine at least 7,000 tons of phosphate per annum, that the royalties were not paid according to agreement, and that the lessee in fact was unable to perform his part of the contract. It is alleged that she became the owner of the land on February 14, 1895. There is no proof of this averment in the record, nor is there any denial of it. A married woman owning real property may sell, convey, or mortgage it as she might do if she were not married, provided her husband joined in the same. Rev. St. Fla. 1892, § 1956. Such sale, conveyance, or mortgage must be acknowledged separately and apart from her husband, before some officer authorized to take such acknowledgment. Id. § 1958. The custody and management of the property remain with the husband. Id. § 2071. It is further enacted that a married woman shall have the right to bring suits or actions for or concerning her real property without joining her husband or next friend. Id. § 2074. These statutes are enacted in conformity to Const. Fla. art. 11. The defendant in the original bill, Achille Laurent, after having answered, filed a cross bill, in which he also proceeds upon the theory advanced by the complainants, that the lease was valid and binding upon the parties thereto. By the cross bill he seeks an accounting and other relief. On this accounting before the master it appeared that the complainants in the original bill were indebted to Achille Laurent on account of the lease. That indebtedness was finally ascertained to be $8,532.35. While the special master was executing the reference to ascertain the state of the account between the parties, the complainant Sue G. Brooks, by her attorney, for the first time raised the point that the lease was void because it was executed by the husband alone, that the property belonged to the wife, and that the assent of the wife had not been given in the mode provided for by the Florida statutes. No

question of this kind was raised by the pleadings. It is only when the litigation based on theories and facts averred by her and her husband has proved in the result unsatisfactory to her that she seeks through counsel, without a change in the pleadings, to take the position that the lease was not in fact made by her, or with legal authority. Is it not a sufficient answer to this late contention to say that the bill contains the averment of her consent to and acquiescence in the lease, and that the action is an equitable suit based on the lease? The relief to be granted, the decrees to be rendered, must be based on the pleadings and on the evidence consistent with them, and arguments and suggestions of counsel cannot be followed to sustain defenses or to grant relief in conflict with the pleadings. The bill shows that the complainants have received benefits from the lease, and that they seek compensation for breaches of its provisions. We would not, we think, be justified in looking beyond the averments of the pleadings to base a decree on the theory, advanced in the argument after the case is closed and submitted, that the lease was never in fact the valid contract of the complainants. The wife having averred that it was made with her authority, and that averment standing unchanged and undenied in the pleadings when the final decree was rendered, we cannot now, at her instance, assume that this statement was untrue. This would be to accept the argument and briefs of counsel in lieu of the record. A decree fairly based on the averments of the complainants' sworn bill should not, we think, be disturbed at the suggestion of the complainants in argument in conflict with the allegations of the bill. If the court accepts as true the sworn bill of the complainants, they cannot be heard to complain. The wife having joined in the sworn allegation that the lease was her valid contract, we must assume, as against her, that this is true, and that she did everything required by law to make the lease binding. It is contrary to the first principles of justice that a party should be permitted to assert rights under a contract, and obtain advantages, or seek to obtain them, by litigation based on its validity, and in a subsequent proceeding relating to the same contract claim that it was without validity, and not binding on him. It seems well settled by principle and authority that a party to a suit is not permitted to take inconsistent positions to the detriment of his adversary on material questions involved in the litigation. In Railroad Co. v. Marcott, 41 Mich. 433, 2 N. W. 795, the court held that counsel, who was shown by the record to have told the jury that in a certain contingency they should find for the plaintiff, could not afterwards take any ground inconsistent with the concession, or claim to be injured by the rulings in accord with it. The court held, in other words, that counsel could not attack the judgment of the court or the ruling of the court which was in accord with his contention. In Ellis v. White, 61 Iowa, 644, 17 N. W. 28, the wife procured a divorce and alimony upon a petition which she claimed later did not give the court jurisdiction to render the decree. It was held that, "whether the court had or had not jurisdiction, she cannot now, having accepted the benefits of the decree, be heard to question the jurisdiction of the court to render it." In

Abbot v. Wilbur, 22 La. Ann. 368, the court held that, where parties made an assertion in a plea for their own benefit, and to the injury of the opposite party, they could not afterwards be heard to say, or permitted to prove, that the assertion was false. In Mills v. Hoffman, 92 N. Y. 182, 190, the court held that the principal cannot accept the benefits of an unauthorized contract made by an agent, and repudiate its obligations, and that a party cannot enjoy the rights awarded to him by a judgment, and deny its force as an adjudication. In Sullivan v. Colby, 18 C. C. A. 193, 71 Fed. 460, it was held by the circuit court of appeals for the Seventh circuit that any confession or admission made in pleading in a court of record, whether express or implied, will preclude the party from afterwards contesting the same fact in a subsequent suit with his adversary, though there is no adjudication upon the point. It was further held in the latter case that where one, in pleading, bases his right to possession of land upon the ground that a lease to him has not yet expired, and his adversary accepts this as an assurance that his possession will not become hostile to the latter's title, the party who so admitted the lease would not be permitted to change his attitude, and claim title by adverse possession. In Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, the court held that:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his attack upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

This case is cited approvingly by the supreme court in Davis v. Wakelee, 156 U. S. 680, 691, 15 Sup. Ct. 555, 39 L. Ed. 578. In the latter case Davis had in a judicial proceeding asserted the validity of a certain judgment. The judgment was in fact void for want of jurisdiction. The court held that Davis nevertheless was estopped in equity from claiming that it was void. Mr. Justice Brown, delivering the opinion of the court, said that:

"Even if Davis had been mistaken as to his legal rights with respect to this judgment and its subsequent discharge, his assertion that it was still of record, and in full force, is none the less binding upon him in view of Wakelee's acquiescence in the ruling of the court sustaining this contention."

The learned justice added that:

"It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position taken by him."

This case, in principle, seems directly in point here. Mrs. Brooks and her husband both assumed the position that this lease was a valid and binding contract, and filed a bill upon the theory that the lessee had committed breaches of it. It is true that the bill sought the cancellation of the lease, but that prayer was, in effect, an admission of the lease as an existing contract. The bill also sought to collect moneys alleged to be due from the lessee on account of the lease. It

sought and obtained an injunction, which could only be had upon the theory of the validity of the lease. All this appeared in the initial pleading filed in the case,—in the original bill. The defendant, Achille Laurent, accepted as true the averment that the lease was an existing and valid contract. His cross bill is filed on that theory. The protracted and expensive litigation proceeded on that theory till the parties appeared before the special master to state the account. If the complainants had been successful in their contentions, and if the statement of the account before the special master had shown a balance in their favor, it is not likely that they would have changed their position and asserted the invalidity of the lease. When the result of the litigation fails to meet their expectations, they change their position, and allege that the lease they sued on as valid is in fact void. The law does not permit this change of position. This view seems to be confirmed in Harkness v. Fraser, 12 Fla. 336, 347. A married woman, in a suit brought by her, sought to take advantage of the alleged fact that she had not acknowledged a deed. The court said:

"The bill alleges that the deed was executed by the complainants. * * * It is not in issue in this case. It is somewhat anomalous that a party should come into a court of equity, and demand that his deed be set aside because of his own blunder, or his imperfect execution of the instrument."

The question not being raised by the pleadings, the court declined to give any importance to the defect, and said that the matter was mentioned in the opinion only because it "was dwelt upon in the argument with some earnestness."

Pomeroy says that the tendency of modern authority "is strongly towards the enforcement of the estoppel against married women as against persons sui generis, with little or no limitation on account of their disability. This is plainly so in states where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right or to maintain a defense." Pom. Eq. Jur. 814. The courts that generally decline to apply estoppels to a married woman do not hesitate to apply the doctrine to her "where she is attempting affirmatively to enforce a right inconsistent with her previous conduct upon which the other party has relied." Id., and authorities there cited. This doctrine is applied against the wife where the husband has acted for her as her agent (McCaa v. Woolf, 42 Ala. 389), and where she acts jointly with her husband (Wilder v. Wilder, 89 Ala. 414, 7 South. 767, 9 L. R. A. 97). The evolution of the law, as shown by constitutions, legislation, and judicial opinions and decisions, is constantly towards yielding to the wife dominion over her property, real and personal, and removing the disabilities of coverture. The statutes which emancipate and confer rights necessarily impose burdens. The statutes that permit her to sue and be sued as a feme sole when she appears in court as a party to a suit make her amenable to the well-settled rule denying to parties the right to take advantage of op-

ponents by assuming, to their injury, inconsistent positions. Such statutes are not intended to confer rights inconsistent with the rights of others. The decree of the circuit court is affirmed.