DODD & COMPANY *v.* BOND.

| 88 | 355 |
| 98 | 671 |
| 88 | 355 |
| 107 | 658 |
| 88 | 355 |
| 113 | 1047 |
| 88 | 355 |
| h115 | 389 |
| 88 | 355 |
| 118 | 210 |
| 88 | 355 |
| 128 | 422 |

1. A creditor who gives credit to a mother on the faith of property to which she has the legal title, but which in equity belongs to her children, acquires no lien upon the property by a judgment rendered against her after she has conveyed it to a trustee for their benefit, although she may have been actuated in making the conveyance by an intent and purpose to defeat such creditor, and such intent and purpose may have been known to the trustee when the conveyance was made. The property being equitably that of the children, and the creditor having acquired no lien upon it before his debtor parted with the legal title, he cannot subject it to sale under his judgment.

2. There was no error in refusing a new trial.
   February 3, 1892.

Debtor and creditor. Lien. Title. Equity. Fraud. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1891.

Reported in the decision.

T. P. Westmoreland and Arnold & Arnold, for plaintiff in error.

W. W. Haden and H. M. Patty, *contra.*

Simmons, Justice.

This was the case of a claim interposed by the trustee of minor children to property levied upon under judgments against their mother. There was a verdict for the claimant, and the plaintiffs made a motion for a new trial, which was overruled, and they excepted. The following appeared from the evidence: George W. Kries, the father of these children, died intestate, leaving an estate consisting of personalty of the value of $4,500. There were four children of ages ranging at the time of his death from two to ten years. The widow, without administration, took possession of this property, and out of the proceeds invested the sum of $2,500 in real estate, taking the title in her own name. She testified that the money thus invested came out of funds to which the children alone were entitled, the remainder of the estate, which was more than her share, being used or expended by her for her own purposes. As to the manner in which she contracted the debt to which it was sought to subject the property in dispute, there was a conflict of testimony, witnesses for the plaintiffs asserting and the debtor denying that in obtaining the credit she represented that the property was her own. On this point the testimony for the plaintiffs was, that in March, 1888, she went to their store and stated to one of the firm that she was about to open a family grocery and wished to purchase goods and run an account at their store. When asked what she had on which to base a credit, she stated that the land in question was hers and that the deed was on record. He told her he would look into it, and if he found she owned the prop-

erty he would let her have some goods. He found the deed on record and the title in her name as stated, and thereupon instructed his salesman to let her have the goods, and a bill of goods was sold her that day. For several months thereafter, goods were bought from time to time on her account, and in November of that year the account was closed and her notes accepted for the amount thereof. On January 2d thereafter she executed a deed to Bond, the claimant, as trustee for the children, conveying the property in dispute, which deed was recorded on the 5th of the same month. It recited, in substance, that the land conveyed had been purchased with money of her husband's estate belonging to her children, and that she had no interest therein, having elected to take a fifth part of the husband's estate as dower and having received and appropriated to her own use the full amount to which she was entitled; that she held in trust for the children, and that they had filed their petition to have her directed to enter a declaration of the trust upon record, or to convey the property to Bond or some other suitable person in trust for them ; and that in consideration of these premises she made the deed. Some time after the record of this deed, suit was instituted and judgments obtained by the plaintiffs against Mrs. Kries upon her notes for the debt in question, and the judgments were levied upon the property conveyed.

In the motion for a new trial, in addition to the usual grounds that the verdict was contrary to law, evidence, etc., it was alleged that the court erred in charging as follows : " If you should believe from the evidence that the facts are as set out by the claimant, you ought to find that this property is not subject to these *fi. fas.* This would be true though it should appear from the evidence that at the time when the plaintiffs extended credit to Mrs. Kries, the title was in her and the credit was extended upon the faith of the title being so in her.

It was also alleged that the court erred in refusing to give in charge the following request by the plaintiffs upon the same subject: "If the jury believe from the evidence that the plaintiffs . . gave credit to the defendant . . on the faith of the land in controversy, and had no knowledge of the secret equity of claimant as trustee for the children named, they ought to find for the plaintiffs; but if they believe that plaintiffs did not give credit on the faith of the land and did have knowledge of the equitable claim of claimant at the time credit was given, then they ought to find for claimant."

1. Under the facts of this case there was no error in the charge or in the refusal to charge here complained of. The property left by Kries at his death constituted a fund which his children, to the extent of their interest therein, had the right to follow wherever it could be traced. Code, §§3152, 2333. When the widow bought the land in question with the money of these children, taking the title in her own name, the beneficial interest in the property at once vested in them, and she held as their trustee, though as one who was so wrongfully. Code, §§3194, 2316. When she gave up the property to the rightful owners by conveying the title out of herself into a trustee for their benefit, no lien had attached to it. No judgment against her in favor of these creditors had been rendered; and their extension of credit to her because the title stood in her name and because of her representations that she was the owner, could not give them any right in the property which would prevail against the transfer by which she afterwards placed the property where it belonged. Such an extension of credit to a wrongful holder of property cannot prevent the rightful owners who have not participated or acquiesced in the transaction and who have done nothing to mislead the creditor as to their rights, from getting the legal title free from the equity of the creditor.

These beneficiaries were infants, and against them no such conduct or acquiescence could be charged.

It was contended, however, that the conveyance was void as against the creditors, because the trustee took it with knowledge of their claim and of the intention of the grantee to avoid thereby the payment of a debt. We do not concur in this view. It appears that the grantor did state to Bond, prior to the making of the deed to him as trustee, that she wanted to avoid the payment of the debt; but this was not the only motive. She also informed him that the property was not hers, but the children's; he told her the creditors would take the children's property, and she asked him to aid in securing it for them. He thereupon employed counsel to institute suit on behalf of the children and to draw the deed in question. The purpose expressed in the deed was to place the property where it belonged. It does not appear that any benefit was reserved to the grantor or that more was conveyed than the children were entitled to.

There is authority to the effect that a conveyance by a debtor of his own property in discharge of a debt, though taken by the grantee with the knowledge that it is intended to hinder, delay or defeat other creditors, is good as against the latter, unless the grantee takes more than the amount of his debt, either for himself or for the debtor or others. It is argued that where the law allows a debtor to prefer one creditor to another, it necessarily follows that other creditors may be hindered, delayed or defeated in the collection of their debts; and that the intention of the debtor to accomplish this is immaterial, so long as his act is confined to the mere payment of a debt; that it is the motive to obtain an unlawful, not a lawful, advantage, combined with the actual obtaining of such undue advantage, which renders the transaction illegal as against the party injured

thereby. See Bump, Fraud. Conv. 205; Martindale, Conv. §36; Worland *v*. Kimberlin, 6 B. Monr. 608, 44 Am. Dec. 785; Covenhoven *v*. Hart, 21 Pa. St. 495, 60 Am. Dec. 57; Lucas *v*. Claflin, 76 Va. 269; Hodges *v*. Coleman, 76 Ala. 103, 120; Knowles *v*. Street, 87 Ala. 357, 6 So. Rep. 273; Moore *v*. Penn, 10 So. Rep. 344; Shelley *v*. Boothe, 73 Mo. 77; Kohn *v*. Clement, 58 Iowa, 591; Arn *v*. Hoersman, 26 Kan. 413; Moline Wag. Co. *v*. Rummell, 14 Fed. Rep. 158.

Whatever may be the true view of the law where a debtor conveys his *own* property to a creditor, we are satisfied that where one conveys property not his own, which he wrongfully holds, to the rightful owner, the law does not require the latter to yield his rights and decline taking it because the person who has withheld it wrongfully, may, in returning it, intend thereby to keep his own creditors from getting it. One who takes merely what is his own is not punished for considerations which may operate upon the mind of the party who gives it up. In this case the wrongful holder of property was performing a legal and moral duty—was doing that which in the eyes of the law ought to have been done, in placing the property where it belonged. We hold therefore that the conveyance is good as against these creditors, and that they cannot subject the property to sale under their judgments.

2. The court below did not err in refusing a new trial on the other grounds of the motion. There was ample evidence to uphold the verdict; and the alleged newly discovered testimony (some of which related to the contents of the tax digests of the county and the returns of Kries as they appeared thereon, and the rest of which was contradictory of Mrs. Kries's testimony as to money of her husband having been on deposit at a certain bank), besides being impeaching in its character, was of a kind which proper diligence could have procured on

the trial; and no such diligence was shown as to call for a new trial. See *Barrow* v. *State*, 80 *Ga*. 192.

*Judgment affirmed.*