SULLIVAN v. COLBY.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1896.)

No. 247.

1. RECEIVERS—INTERFERENCE WITH POSSESSION.
A court of equity may enter a rule requiring one to show cause why he should not surrender to a receiver appointed by it certain real estate, and may on the hearing determine and enforce the rights of the receiver against the party accused of interference with his possession or management, unless the answer should set up some right or title of which a trial by jury is claimed.

2. ESTOPPEL BY RECORD—ADMISSIONS IN PLEADING.
Any confession or admission made in pleading in a court of record, whether express, or implied from pleading over without a traverse, will preclude the party from afterwards contesting the same fact in any subsequent suit with his adversary, though there is no adjudication upon the point.

3. ESTOPPEL BY PLEADINGS—INCONSISTENT POSITIONS.
Where one, in a pleading, bases his right to possession of land on the ground that a lease to him has not yet expired, and his adversary accepts this as an assurance that his possession will not become hostile to the latter's title, and that it cannot, except upon an open change of his attitude, become adverse, he cannot thereafter claim title by adverse possession.

4. ESTOPPEL—IGNORANCE OF FACTS.
Ignorance or mistake, if it arises from culpable negligence, will not prevent an estoppel.

**5. WEIGHT OF EVIDENCE—WITHDRAWAL OF QUESTION FROM JURY.**

When the truth of the matter is so manifest upon the entire evidence that it will be the plain duty of the court to set aside any verdict to the contrary, it is proper, by a peremptory instruction, to withdraw the question from the jury.

**6. DECLARATIONS AS TO TITLE—ESTOPPEL.**

Where one's possession of a tract is of the whole, as a single body of land, so that an unqualified declaration or claim by him in respect to his possession or ownership of a part by necessary implication includes the whole, an estoppel in pais arising out of such declaration extends to the whole of the tract, in the absence of facts in evidence limiting its scope.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

This was an action by Charles L. Colby against Cornelius Sullivan. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Richard Prendergast, for plaintiff in error.

J. L. High and H. W. Booth, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. The question presented by this appeal is whether the court erred in directing a verdict for the defendant in error, who was the plaintiff in the action. The oral argument left us in doubt, but a fuller study of the case has brought us to the conclusion that the instruction was justified. The action was in ejectment for the recovery of a tract of land, containing about 100 acres, in the S. ½ of section 25, at Riverside, Ill., owned prior to March, 1872, by David A. Gage, and by him conveyed, with other lands, by deed, which was filed for record March 12, 1872, to the Riverside Improvement Company. That company caused the land to be platted, and the plat to be recorded, as the Third Division of Riverside, but it is agreed that the land has remained inclosed as a single tract, without marks upon the ground to indicate blocks, lots, or streets, and that streets have not been opened upon it. The Riverside Improvement Company, and its grantees, the Riverside Water & Gas Works Company and the Chicago & Great Western Railroad Land Company, executed to different parties trust deeds and mortgages of various lots of the division, including the lots constituting the land in controversy; and by sales upon foreclosure and other mesne conveyances, the title became duly vested in Charles L. Colby, the plaintiff in the action. Under the general issue the plaintiff in error, Cornelius Sullivan, endeavored to establish title in himself to the entire tract by reason of adverse possession for twenty years, and to a part of the land by proof of possession under color of title and payment of taxes for seven years or more before the action was brought. The action was commenced in December, 1892, and upon the proof, which upon this point is not without conflict, it seems probable that in the fall of 1872 Sullivan inclosed the land by building or rebuilding a fence upon one side of it,—the land being worth at that time from $1,500 to $2,000 per acre,—and that since that time he has been in possession, asserting, as a number of witnesses have testified, an un-

defined ownership or interest in the land, though, upon his own testimony, the strong probability is that when he took possession he made no pretense of ownership, and had no intention of asserting or of acquiring any interest, unless it was a leasehold or mere license. He had no other right, and knew that the land had been sold by Gage to the improvement company. There is evidence, too, of an arrangement, or consent of that company, that Gage should remain in possession until the land was required for improvement in accordance with the company's scheme, and that he did continue to use the land in connection with an adjacent farm until August, 1872, when he surrendered control to Sullivan, who theretofore had been in his employ, and to whom he was considerably indebted. If there was not an actual transfer of possession by one to the other, it is certain that Sullivan's possession immediately followed that of Gage, and that, in constructing the fence put upon the land in dispute, he used lumber taken from fences on the adjacent farm leased of Gage, of which he obtained possession at or near the time when he assumed control of this land. Unless it was under or by permission of Gage, his entry upon the land was without justification or pretense of right. It was vacant property, where cattle and horses—his own, with others—were wont to run; "and in order to keep my horses there straight," he testified, "and improve the country, I erected a fence there, because nobody claimed to own it. It was no man's property, and I thought I would take care of it, as long as I didn't see anybody else that wanted it." But as he also testified, and in some measure was corroborated by other witnesses, to the effect that he took possession under a claim of title, and ever since has asserted exclusive ownership, it is conceded that if the case turned upon the inquiry at what time, and under what assertion of right, he entered, the questions should have gone to the jury.

Upon other facts, now to be stated, the court below deemed Mr. Sullivan estopped to assert adverse possession or ownership of the property. In 1874 Alpheus C. Badger brought, in the circuit court of Cook county, a bill for the appointment of a receiver of the Chicago & Great Western Railroad Land Company, which then held the title to the premises conveyed by Gage to the Riverside Improvement Company, subject to various mortgages and trust deeds, for the foreclosure of which suits were instituted about the same time in the same court. William D. Kerfoot was appointed receiver, upon Badger's bill, which was brought for the protection of mortgage bondholders, to whose rights Colby, the defendant in error, succeeded by purchase. The bills for foreclosure and the Badger bill were consolidated by order of the court, and heard, in 1877, as one cause, under the title of "Peck et al. v. The Chicago and Great Western Railroad Land Company et al."; and, under the decrees of foreclosure therein rendered, the lots comprising the land in controversy were sold by a special commissioner, Clarence I. Peck purchasing most of them in behalf of the complainants in the Peck suit. In October, 1880, when the period of redemption from the sale was about to expire, the receiver, Kerfoot, at the instance of Peck, filed in the court a petition

against Sullivan, describing the portions of the land in controversy covered by Peck's certificate of purchase, and alleging that Sullivan had taken possession thereof, and had fenced and was holding the same, notwithstanding a demand by the petitioner for possession, which, it was charged, was an interference with the receiver in the discharge of his trust. Upon this petition the court granted a rule upon Sullivan, October 4, 1880, to show cause on the next Monday why he should not surrender to the receiver the real estate described in the petition. The petition was entitled, and the rule was entered in the case of, "Badger v. The Chicago and Great Western Railroad Land Company;" and under that title Sullivan, at the required time, filed a sworn answer, setting up: (1) That he had not been served with process, or in any way made a defendant, and was advised that the court had no jurisdiction to enter the rule, or to pass upon the question between him and the parties or the receiver. (2) That the receiver has no title to the premises. (3) That none of the parties has title thereto. (4) "That in the year 1873, prior to the commencement of this suit, one David A. Gage was the owner of the land in question, and at said time said Gage was indebted to this respondent in a large sum of money ($2,000 or thereabouts), and, being unable to pay said debt, the said Gage gave to this respondent a lease of the property in question at a reasonable rent per annum,—said rent to be applied to the extinguishment of said indebtedness,—and the lease was to continue until said indebtedness was fully paid." "This respondent says that he is ignorant of the exact amount of land claimed by said receiver, but that at a reasonable rent per annum for the same, to wit, $100 per annum, said debt has not been paid. Respondent further says that said lease above mentioned was accepted by him from said Gage, and in pursuance of the same he entered into possession of said premises at the time, and has been in undisputed possession of the same ever since." And (5) "that said receiver has never been in possession of said property, and has not laid claim to the same, to his knowledge, until within the last few weeks." The matter was disposed of by an order of the court entered October 20, 1880, of the tenor following: "On reading and filing the answer of Cornelius Sullivan, it is ordered that the rule on him to show cause, heretofore entered herein, be, and the same is hereby, discharged."

In behalf of the plaintiff in error, it is insisted that these proceedings do not constitute an estoppel of record, for the reasons—First, that the court had no jurisdiction to entertain the petition of the receiver; and, second, that it does not appear but that, the lack of jurisdiction being conceded, the court discharged the rule without considering the merits of the petition, or of the fourth clause of the answer, and that there is no estoppel in pais, because the answer was filed under the mistaken belief that the petition described and had reference to another tract of land, known as the "Badger Farm," of which he was in possession at the time. We entertain no doubt of the power or jurisdiction of a court of equity to enter such rules, and upon the hearing to determine and enforce the rights of the receiver, against a party accused of interference with the receiver's possession

or management, unless, in his answer to the rule, he should set up some right or title of which he had and should claim the right of trial by jury, in which case, as we suppose, the rule would be discharged without any attempt to determine or adjudge the truth of the answer. But an adjudication upon matter alleged in a proceeding or pleading in a court of record, it would seem, is not necessary to create an estoppel against a contrary or inconsistent assertion in any subsequent suit with the same adversary, or his privies in estate or in law. "Any confession or admission made in pleading, in a court of record, whether it be express, or implied from pleading over without a traverse, will forever preclude the party from afterwards contesting the same fact in any subsequent suit with his adversary." This is the definition of "estoppel by matter of record." Bouv. Law Dict. (11th Ed.); Com. Dig. There was in this case no traverse by the receiver, or by any party, of the facts alleged in the answer; and the legitimate if not necessary conclusion, from the face of the record, accords with the uncontradicted evidence upon the point, that the receiver and other parties in interest were content with the statements or admissions of the answer, since they removed all question of adverse possession, and on that ground acquiesced in a discharge of the rule. The answer showing no other ground which was tenable, it must be presumed that the court proceeded upon that ground. The case therefore comes within the rule declared in the recent case of Davis v. Wakelee, 156 U. S. 680, 689, 15 Sup. Ct. 555, where it is said:

"It may be laid down as a general proposition that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

Our conclusion, therefore, is that there was a complete estoppel of record against the assertion by the plaintiff in error of any prior right or interest in the land, different from the right then set up in his answer. But the estoppel of record, being technical and subject to strict construction, does not in itself extend, as we suppose, beyond the lots described in the petition of the receiver, and, as a portion of the land in dispute was not included in that description, does not dispose of the entire controversy.

This brings us to the position asserted at the hearing by counsel for the plaintiff in error, that, if there is any estoppel in the case, it is not of record, but an estoppel in pais, and that essential elements of such an estoppel are not proved. We are of opinion, however, that the evidence of such an estoppel is ample, and, in every essential particular, without conflict. For the purpose of this proposition, it may be assumed, though not necessarily, that the order of the court discharging Sullivan from the rule to show cause was not based upon the fourth clause of his answer, and that for that reason a strict estoppel of record is not shown. The fact remains that the answer, with the added sanction of an oath, was filed. It was the duty of Sullivan thereby to define his position, and, when so defined, it was the privilege of the receiver and other parties interested to count upon his abiding by it. Even without evidence directly to the point,

the fair inference would be, and so is the uncontradicted evidence, that they did accept the answer as an assurance that the possession of Sullivan was not hostile to their title, and could not, except upon an open change of his attitude, become adverse. The attempt was made by Sullivan to testify that he did not know the contents of the receiver's petition, and supposed that he was called upon to answer in respect to his possession of the Badger farm, and so it is urged that he ought not to be precluded by a mistake. If, under the circumstances, he was in fact mistaken, it was the result of gross and inexcusable negligence, the consequence of which should be borne by himself, rather than by those who were lulled thereby to sleep upon their rights. Smith v. Newton, 38 Ill. 230; Hill v. Blackwelder, 113 Ill. 283; Rice v. Bunce, 49 Mo. 231; Raley v. Williams, 73 Mo. 310; Beardsley v. Foot, 14 Ohio St. 414. "The rule has sometimes been stated," says Pomeroy, "as though it were universal, that an actual knowledge of the truth is always indispensable. It is, however, subject to so many restrictions and limitations as to lose its character of universality. It applies in its full force only in cases where the conduct creating the estoppel consists of silence or acquiescence. It does not apply where the party, although ignorant or mistaken as to the real facts, was in such a position that he ought to have known them, so that knowledge would be imputed to him. In such case ignorance or mistake will not prevent an estoppel. Nor does the rule apply to a party who has not simply acquiesced, but who has actively interfered, by acts or words, and whose affirmative conduct has thus misled another. Finally, the rule does not apply, even in cases of mere acquiescence, when the ignorance of the real facts was occasioned by culpable negligence." 2 Pom. Eq. Jur. § 809. But that Sullivan did not suppose that he was answering concerning his possession of the Badger farm, instead of the land in controversy, is demonstrated by his own testimony in response to questions of the court, which we quote:

"The Court: When did the city take possession? A. The city turned the Gage property over in trust to George Taylor. Q. When? A. 1873. Some time in 1873. Q. You said a moment ago that you didn't know that that part of Mr. Gage's farm didn't belong to Mr. Gage until the city took possession. When was that? A. Until George Taylor— Q. But when was that,—in 1874? A. Yes, sir. Q. Then you found out that the Badger farm wasn't Gage's, but Badger's? A. Yes, sir; that the Badger farm wasn't Gage's, but belonged to Mr. Badger. But I still retained, still kept in possession of the Badger property, because Mr. Gage made a deal with me at the time that he sold me the horses. Q. Did you know about that at that time? A. No; I didn't know until there was a suit brought, and somebody tried to dispossess me. Q. When was that? A. 1873 or 1874. Q. Then you knew it was Badger's? A. Yes, sir. Q. Did you know it wasn't Gage's after that? A. Yes, sir; I knew it wasn't Gage's after that. Q. You knew that you had no right to it under Gage's lease? A. There was nobody came to take possession— Q. Didn't you know that you had no right under your lease from Gage? A. I didn't know that I had no right under Gage's lease. I thought I had a right under Gage's lease until some time that somebody came to claim the property. Q. Did you think that this was a case of Badger trying to get possession of the property? Did you think this case in which you filed your answer was a case of Badger trying to get possession of the property? A. No, sir; I didn't. I thought when I filed that

answer that it was a case of somebody, but I wanted to be retained in that property until I had what I considered my whole indebtedness of $2,000 out of it. Q. But you knew that Gage had no right in it when you filed this answer? A. I didn't know that Gage had no right in it until it was proved whether they had·or not. Q. Didn't you just say, a few moments ago, that you found out in 1874 that Badger owned that property, and that Gage had no right to it? A. I found out that somebody owned it, and that it was not a part of the Gage property that he turned over to me. Q. In 1874? A. I don't know. I found out something about it. Q. How did you come to make this affidavit that you held under Gage? This affidavit is six or eight years afterwards? A. Yes, sir; I understand. I made that affidavit because I considered that— Nobody came and claimed it until that time, and I didn't know whether these parties owned it or not; and I considered that the equivalent that Mr. Gage gave me for my $2,000, the money that he owed me, was not sufficient in the brood mares that he turned over, and the small time that I had the farm. Q. You knew, Mr. Sullivan, that you would not have a right to hold Badger's property for a debt that Gage owed you? A. Certainly I knew it; as soon as it was proved that Badger owned it. Q. Why did you make this affidavit that you leased this property? A. I thought that I had a right to°hold it until it was determined who owned the property."

The truth of the matter was so manifest, upon the entire evidence, that it would have been the plain duty of the court to set aside any verdict to the contrary; and, that being so, it was not improper, by a peremptory instruction, to withdraw the question from the jury. So it has often been declared by the supreme court. Among the cases, see Improvement Co. v. Munson, 14 Wall. 442; Pleasants v. Fant, 22 Wall. 116; Commissioners v. Clark, 94 U. S. 278; Railroad Co. v. Jones, 95 U. S. 439; County of Macon v. Shores, 97 U. S. 272; Stewart v. Lansing, 104 U. S. 505; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322; Commissioners v. Beal, 113 U. S. 227, 5 Sup. Ct. 433; Marshall v. Hubbard, 117 U. S. 415, 6 Sup. Ct. 806; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569. The estoppel in pais, which we think indisputable, though founded upon the answer which is the basis of the estoppel of record, reaches beyond the record and covers the entire controversy. Sullivan's possession, from the beginning, was of the entire tract in dispute, as a single body of land, so that any unqualified declaration or claim by him in respect to his possession or ownership of a part of it by necessary implication included the whole. So the parties interested had a right to understand, as the evidence shows they did; and consequently the estoppel arising out of the declaration, in the absence of facts in evidence to limit its scope, should be deemed equally broad.. Being by force of the estoppel a tenant, admitted to possession by Gage, from whom Colby derived title, Sullivan, without first having openly disavowed that relation, could not acquire an adverse title by paying taxes. Upon this point it has been suggested that if, after his conveyance of the land, Gage had acquired an outstanding title, Sullivan, as his lessee, could assert that title against Gage's former grantees, but whether that would be so need not be considered. Gage acquired no new title. He remained in possession by permission, and in subordination to the rights of his grantees; and, receiving possession from him, as he is estopped to deny, Sullivan came into no better position. Assuming that the plaintiff in error, when he answered the petition of the re-

ceiver, knew that the lots described composed the land now in dispute, it follows, as was suggested by the court below, that the claim made in that answer that he held as tenant of Gage was a break in the continuity of his assertion of adverse possession; but we prefer to rest our decision upon the doctrine of estoppel, by which, in cases like this, a party is held responsible, not merely for the knowledge which he had, but for that which under the circumstances he ought to have had.   The judgment below is affirmed.