### In re GARNER.

### GARNER v. FINDLEY.

#### (District Court, N. D. Georgia. June 29, 1901.)

#### No. 90.

BANKRUPTCY—INTEREST OF WIFE IN LANDS—ESTOPPEL.

    A wife furnished one half the money from her separate estate for the purchase of a farm, under an agreement between her and her husband, who furnished the other half, that they should be equal owners. The legal title remained in a third person as security for unpaid purchase money, but a bond for a deed had been executed to a prior purchaser, which was assigned to the husband, who promised, on his wife's objecting when she learned such fact, that the deed should be made to both. While the title stood in such condition the husband became a bankrupt. *Held*, that the wife was not, estopped to claim and recover her interest in the land as against the general creditors of her husband by the condition of the title or by any representations by him as to his sole ownership, made without her consent or knowledge, whether the question be determined by the decisions of the supreme court of Georgia or of the supreme court of the United States.

In Bankruptcy. On petition of Mrs. Millie Garner, wife of the bankrupt, against his trustee.

H. H. Perry, for complainant.

Dean & Hobbs, for trustee.

Howard Thompson, for bankrupt.

NEWMAN, District Judge. On the 12th day of January, 1899, John D. Garner was adjudged a bankrupt. On October 3, 1899, Mrs. Millie Garner, wife of the bankrupt, filed her petition on the equity side of the district court against the trustee, asking that she be decreed to have an undivided one-half interest in the equity in a certain tract of land in Hall county, Ga. The petition was referred to the referee to take the evidence, and the facts, as gathered from the pleadings and the testimony so taken, are as follows: That Mrs. Millie Garner was married to John D. Garner on December 18, 1889, at which time she owned a farm in Hall county, and had in money $426; that she agreed with her husband to sell her farm and purchase jointly with him the land now in controversy, each paying one-half of the purchase money, and said purchase was made from H. T. Martin for $4,250, subject to a debt of $2,500 due to one Stanley, who held the legal title to the land, Martin having a bond for title thereto; that Mrs. Garner sold her own farm for the sum of $1,670; that she turned over to her husband the sum of $2,000, to be paid upon the land they bought, and that her husband contributed $2,000, which left a balance due to Martin of $250, which was afterwards paid off from the proceeds of the farm; that the debt due Stanley of $2,500 was afterwards transferred by him, together with the legal title, to

Miss Cora Wood, and $500 has been paid upon the principal of this debt from the proceeds of the farm; that said Martin, without the knowledge of Mrs. Garner, transferred the bond for title held by him to John D. Garner, and when Mrs. Garner discovered this she objected, but her husband assured her that the deed when made should be to them jointly; that the bankrupt afterwards, without the knowledge of Mrs. Garner, executed to the State Banking Company of Gainesville, Ga., a mortgage upon said land to secure a loan made by him from the banking company; that he did not advise the officers of said banking company that his wife owned a half interest in said land, nor did he advise other parties from whom he borrowed various sums of money, but claimed that it was his property alone. The bankrupt has a number of general creditors. It is shown that the bankrupt made a statement to a mercantile agency, which was such that the land must have been embraced in the real estate he claimed to own. One, at least, of these general creditors had a copy of this mercantile agency statement, and probably acted on it in giving the bankrupt credit.

The record shows no act whatever on the part of Mrs. Garner to induce persons to give credit to her husband as the sole owner of this land. If she is estopped at all from setting up her claim now to an undivided half interest, it must be because of her allowing the title to remain in her husband, thereby enabling him to hold it out to the world as his own. Is this sufficient? In Bell v. Stewart, 98 Ga. 669, 27 S. E. 153, the supreme court of the state, referring to several former cases on the subject, determined the question at issue here in a way favorable to the contention of Mrs. Garner. An extract from the opinion by Chief Justice Simmons will show what was determined:

"Undoubtedly the wife was the owner of an equitable undivided interest in the land, and it was proper and lawful for the husband to convey to her a portion of the land, now greater in value than the amount of her money that went into the purchase. Brooks v. Fowler, 82 Ga. 329, 9 S. E. 1089; Dodd v. Bond, 88 Ga. 355, 14 S. E. 581. The judgment against the husband not having been obtained until after the land had been conveyed to her, her title, if the conveyance was made in good faith, was superior to the judgment, unless there was conduct on her part amounting to an estoppel; that is to say, unless her conduct had been such as to mislead the creditor, and cause him to extend the credit to the husband upon the faith of the latter's apparent ownership of the property. In no way could an extension of credit upon the faith of property which did not in fact belong to the debtor give the creditor any right to subject it, as against the real owner, to the payment of the debt. In the cases relied on by counsel for the defendant in error, and in all others in which this court has held that a creditor could subject to a general judgment against the debtor, as against the claim of an equitable owner, property which at the time the credit was extended was apparently the property of the debtor, the creditor had obtained his judgment while the legal title was still in the debtor, or there was conduct on the part of the equitable owner which operated as an estoppel. See Zimmer v. Dansby, 56 Ga. 79; Sumner v. Bryan, 54 Ga. 614; Kennedy v. Lee, 72 Ga. 39; Humphrey v. Copeland. 54 Ga. 543; Hobbs v. Trust Co., 96 Ga. 770, 22 S. E. 331. In the present case no inquiry was made of the wife by the creditor, nor, so far as appears, was anything said by her to induce the belief that her husband was the sole owner of the land. It does not appear that she was ever brought into contact with the creditor at all. She did not authorize her husband to take the title in his own name alone, but, on the contrary, insisted,

as soon as she learned that it was in his name, that he should make a deed to her of her part of the land. There is no evidence whatever that she gave him permission to use the property as his own exclusively, and it was accordingly error for the trial judge to charge the jury, as he did, upon the hypothesis that she did give such permission."

Although some of the former cases on the subject, particularly Kennedy v. Lee, 72 Ga. 39, may not be in entire harmony with the views expressed in Bell v. Stewart, still the latter case must control, and, tested by that, it seems that, if this court follows the decisions of the supreme court of the state, there is no reason, under the facts disclosed by this record, why Mrs. Garner is not entitled to have her undivided half interest in this land decreed to her.

If, however, it is a question which should be controlled by general law, and is not one in which this court will follow the decisions of the supreme court of the state, then the general law on the subject, as laid down by the supreme court of the United States, will be found to be at least as favorable to Mrs. Garner in this case as are the decisions of the supreme court of the state. In Garner v. Bank, 151 U. S. 420, 14 Sup. Ct. 390, 37 L. Ed. 218, an extract from the opinion by Mr. Justice Harlan will show that that court is in entire harmony with the views announced by the supreme court of this state in Bell v. Stewart. The extract is as follows:

"Applying the principles recognized by this court, as well as by the highest court of the state in which the property in question is situated, and where the transactions in question occurred, we hold that Mrs. Graeffe is entitled to a decree canceling the deeds under which the defendants claim the property described in the deed to her. That her husband was without any means of his own, and had in his possession, substantially, the entire estate of his wife, controlling and managing it for her; that the property in question was purchased and improved wholly with her money, under an explicit assurance by him, before the purchase was made, that it would be put in her name; that she relied upon his compliance with that promise; that the husband, on the 1st of March, 1881, owed her a larger sum than the amounts expended in purchasing and improving the property; that the conveyance to Garner, in order that he might convey to Mrs. Graeffe, was made in good faith, for the purpose, and only for the purpose, of satisfying, to the extent of the value of the property conveyed, the debt due to the wife; and that no one became a creditor of the husband in consequence of any representation made by her, or with her knowledge, that he owned the property,—are all facts clearly established by the evidence. Why should not the wife be protected under these circumstances? If the husband in fact had owned this property, and, in order to prefer a part of his creditors, had, in good faith, sold and conveyed it to them, with the intent to give a preference over other creditors, the right of such grantees to hold it, unless the case was brought within the insolvent laws of the state, could not be questioned. No different rule should be enforced in this case against a wife who has received a conveyance of property purchased with her money, and which should have been put in her name when so purchased. By no act or word upon her part was the husband discharged from the performance of his agreement to put the property in her name. The conveyance to Garner, followed by his conveyance to her, was executed for the purpose of discharging the husband's obligation to the wife, and was made before any creditor acquired a lien upon the property by attachment. As between the husband and wife, a court of equity would have compelled him to secure this property to her. If, before any rights of attaching creditors intervened, he did voluntarily what the law made it his duty to do, the transaction is not subject to impeachment by his creditors, unless the wife has been guilty of such fraudulent conduct as ought, in conscience, to estop her from claiming the property as against such creditors. If the wife had herself been guilty of deception, or if she had con-

tributed to its success by countenancing it, she might, with justice, be charged with the consequences of her conduct. Sexton v. Wheaton, 8 Wheat. 229, 240, 5 L. Ed. 603. But the evidence furnishes no ground for the imputation of fraud against her. That she relied upon the husband's promise to purchase the property for her and invest her with the title, and that she again relied upon his assurance, given in August, 1880, that he would have the property conveyed to her, are circumstances that do not affect the substance or good faith of the transaction. She acted with all the diligence that could reasonably have been expected or required under the circumstances. She supposed that he kept an accurate account of all transactions involving her estate as managed by him, and had no purpose to give him a false credit before the world. As subsequent developments showed, she erred in relying upon the assurance and promises of her husband as much as she appears to have done. But, as fraud cannot be imputed to her, a court of equity ought not, for such an error, to deprive her of that which is justly hers."

It is undoubtedly true, therefore, that, as against the general creditors of the bankrupt, Mrs. Garner has the right to have a decree in her favor for an undivided half interest in the land in question.

As to Mrs. Garner's right, however, against the State Banking Company, an entirely different question is presented. It appears from the record that that bank has a mortgage on this land, given by Garner for his individual debt. The bank appears to be made a party to the proceeding in this court, but, so far as can be gathered from the record, it was never served, and it has not entered an appearance. Even if Mrs. Garner could have a decree against the bank in view of its contract lien on the land, the lien cannot be removed or any decree rendered against the bank as the record stands. The bill is filed against Findley as trustee of the bankrupt, John D. Garner, Harrison T. Martin, and the State Banking Company, and subpœna is prayed against all of them; yet, as stated, the record shows no service whatever, nor does it show any appearance by any one except the trustee, who has answered the bill, and participated in the taking of evidence before the referee. Mrs. Garner is undoubtedly entitled to her interest in this land as against general creditors. They are fully represented in this litigation by Findley, trustee.' As the record now stands, no decree can be entered against the State Banking Company.