## CAREY v. WIMPEE.

(District Court, N. D. Georgia, N. W. D. July 18, 1914.)

### No. 13.

HUSBAND AND WIFE (§ 129*)—SEPARATE PROPERTY OF WIFE—ESTOPPEL TO CLAIM.

Property owned by a wife was exchanged in part payment for a farm, the remainder of the price being unpaid. A bond for a deed was executed in the name of the husband, who afterward, while they were living together on the farm, transferred it to his wife, and later became a bankrupt. *Held*, that the wife was not estopped to claim the land, as against the bankrupt's creditors, because the bond for a deed was for a time in

his name, or because of any representations made by him with respect to the ownership of the property, where she neither said nor did anything to induce a belief that he owned it.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 283, 468–470; Dec. Dig. § 129.*]

In Equity. Suit by C. Irving Carey, trustee in bankruptcy of G. W. Wimpee, against Mrs. S. Frances Wimpee. Decree for defendant.

Lipscomb & Willingham and Nathan Harris, all of Rome, Ga., for plaintiff.

Max Meyerhardt, Sharp & Sharp, and J. M. Hunt, all of Rome, Ga., for defendant.

NEWMAN, District Judge. This suit is brought by Carey, trustee in bankruptcy, against Mrs. Wimpee and others, to cancel the transfer of a bond for title by Mrs. Wimpee's husband to her. The issues in the case are: First, whether Mrs. Wimpee owned an equity in certain real estate in East Rome, which was used in part payment for the farm, the property in question here; and, second, if she did, whether, after having allowed a bond for title to be taken in the name of her husband, G. W. Wimpee, she acted in such way as to cause certain creditors of Wimpee to believe that the farm land belonged to him. The trustee says that she allowed the bond for title which was taken for the farm land to be taken in his name, and allowed him to represent to creditors that it was his, and thereby to give him credit on the strength of his ownership of the property.

All this is denied by the defendant, Mrs. Wimpee, who says that the property in East Rome belonged to her, and was taken, at $2,500, on the trade for the farm, for which it was agreed $8,500 was to be paid. She says, also, that she did nothing to induce any creditors to give credit to Wimpee on the strength of his ownership of the property, that she never told anybody that he owned it, or did anything to cause them to believe that he owned it.

There is considerable evidence in the case, taken before a master to whom the case was referred, but who never made a report thereon. I have read this evidence over carefully, and I think there can be no doubt of the question of fact that the property in East Rome belonged to Mrs. Wimpee. Her evidence, and that of her husband, and of other witnesses in this case, shows that, I think, very clearly. While the husband may have added some little amounts to the purchase money of this property, the great bulk of it was evidently, by the evidence here, made by Mrs. Wimpee by selling milk, taking boarders, and in other ways. I do not think that that can be seriously questioned. So, taking this an an established fact, it appears that her property to the extent of $2,500 went into the purchase of the farm.

The husband and wife took possession of this farm and lived on it until the time the testimony in this case was taken. There is some slight controversy in the evidence as to who was in possession, but the fact is that they lived there together. It also seems to be true from the evidence that Mrs. Wimpee rented the most of the farm land

to her husband, and he tried to make something on the land in 1911, but made almost a complete failure of the crops.

On November 8, 1911, the bond for title to this land was transferred by G. W. Wimpee to Mrs. G. W. Wimpee, and it is claimed by Mrs. Wimpee that this was simply a correction of the bond for title from Brown, which should have been made to her, instead of to G. W. Wimpee, at the time it was executed, and the transfer to her by Wimpee was made in view of the fact that her money had paid all that had been paid on the property, and this was the first opportunity they had had to make the bond speak the truth in giving her her rights in the premises.

The case is a troublesome one, because there are several sides to it. I may state now, however, one thing, and that is that I do not believe the claim of Mrs. C. E. Barfield can be determined or passed upon in this case. It seems to me to be a separate matter, and not to enter into the controversy between the trustee in bankruptcy and Mrs. Wimpee, which is really the controversy before the court.

The main question really is whether or not the placing of the bond for title in the name of G. W. Wimpee, the husband, and what occurred afterwards, as disclosed by the evidence, was sufficient to charge the equity in the property with the debts due by Wimpee and scheduled by him in his schedule in bankruptcy. This question seems to me to be controlled absolutely by a case decided by this court some years ago. Garner v. Findley (D. C.) 110 Fed. 123. The headnote in that case will show what was there decided, and it is as follows:

"A wife furnished one half the money from her separate estate for the purchase of a farm, under an agreement between her and her husband, who furnished the other half, that they should be equal owners. The legal title remained in a third person as security for unpaid purchase money, but a bond for a deed had been executed to a prior purchaser, which was assigned to the husband, who promised, on his wife's objecting when she learned such fact, that the deed should be made to both. While the title stood in such condition the husband became a bankrupt. Held, that the wife was not estopped to claim and recover her interest in the land as against the general creditors of her husband by the condition of the title or by any representations by him as to his sole ownership, made without her consent or knowledge, whether the question be determined by the decisions of the Supreme Court of Georgia or of the Supreme Court of the United States."

I think the discussion of the question involved in that case is sufficient by reference to it, without going over it again at this time. It was held in that case that the record showed no act whatever on the part of Mrs. Garner to induce persons to give credit to her husband as the sole owner of the land, and if she was estopped at all it was because of her allowing the title to remain in her husband. The decision of the Supreme Court of Georgia in Bell v. Stewart, 98 Ga. 669, 27 S. E. 153, was cited in support of the contention for Mrs. Garner in that matter, and also Garner v. Bank, 151 U. S. 420, 14 Sup. Ct. 390, 37 L. Ed. 218, to the same effect.

The cases are very much alike in their facts, and, unless some reason is apparent for changing the court's view of the matter, the case of Bell v. Stewart should control here. I do not see that there is anything incorrect as to the finding upon the law in that case, and

see no reason why it is not as applicable now as it was then. In my opinion the equities of this matter are strongly with Mrs. Wimpee, and she is consequently entitled to a decree.

But this may be added, that so far as the creditors who sold property to Wimpee on his representations that he was the owner of the farm are concerned, assuming the same to have been untrue, and known to him to be untrue, as appears to be claimed here, they will be fully protected by paragraph 2 of section 17 of the Bankruptcy Act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), which provides that a discharge in bankruptcy shall not release the bankrupt from liabilities for obtaining property by false pretenses or false representations. If he bought goods from the various merchants who are referred to here by making false representations within the meaning of the law, his discharge in bankruptcy will not hurt such creditors, and they will have the same rights against him as they had before.